UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL GREGORY,<br><br>Plaintiff, | ) | |
| VS. | ) | No. 19-1107-JDT-cgc |
| JOSHUA MORTON and DOROTHY ROBERSTON,<br><br>Defendants. | ) | |

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

Daniel Gregory, a prisoner acting *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983 in the U.S. District Court for the Middle District of Tennessee against Correctional Officer Joshua Morton and Unit Manager Dorothy Robertson. (ECF No. 1.) Chief U.S. District Judge Waverly D. Crenshaw directed that process be issued after screening the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). (ECF Nos. 4 & 5.) On May 29, 2019, Judge Crenshaw granted Defendants' motion to transfer the case to this district because the events of which Gregory complains occurred at the Hardeman County Correctional Facility (HCCF) in Whiteville, Tennessee. (ECF No. 22.)

In Judge Crenshaw's screening order, he allowed the following claims to proceed against the Defendants in their individual capacities: Gregory's Eighth Amendment claims against both Morton and Robertson for failure to protect, and his Fourteenth Amendment equal protection claim

against Morton. (ECF No. 4.) Defendants have now moved for summary judgment. (ECF No. 31.) Gregory has not filed a response to Defendants' motion.

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[1] or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials– including the facts considered undisputed–show that the movant is entitled to it; or

---

[1] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

In *Celotex Corp.*, the Supreme Court explained that Rule 56:

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. However, where the party moving for summary judgment also has the burden of persuasion at trial, the initial burden on summary judgment is higher. Under those circumstances, the moving party must show "that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) (internal quotation marks omitted).

In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (same). However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The fact that Gregory has not responded does not, by itself, require granting the motion for summary judgment. Nevertheless, if the Defendants are entitled to judgment as a matter of law on the evidence contained in the record, then summary judgment is appropriate. *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979).

The factual allegations in Gregory's complaint were summarized by Judge Crenshaw:

> According to the complaint, while Plaintiff was incarcerated at the Hardeman County Correctional Facility in Whiteville, Tennessee, on April 16, 2018, he was attacked by five Vice Lord gang members in the dayroom of G-B Pod. ([ECF] No. 1 at 6). During the attack, corrections officer Joshua Morton "did not what so-ever to come to [Plaintiff's] assistance" and did not call for assistance until Plaintiff already was out of harm's way. (*Id.*) Plaintiff was taken to the medical department and was evaluated for a small gash above his lip and a knot on the back of his head. Morton "wrote up" Plaintiff for fighting and placed him in segregation. (*Id.*) Morton placed two of the gang members who were involved in the fight in segregation. Morton released those gang members from segregation within twenty-four hours, but forced Plaintiff to stay in segregation for eight days. Morton did not punish at all three of the gang members involved in the fight. Plaintiff believes Morton decided who went to segregation and for how long . . . based on their race. (Id. at 2). Unit Manager Dorothy Robertson did not report this first attack on Plaintiff. (Id. at 9).
>
> While Plaintiff was in segregation, Morton taunted the Vice Lords by telling them in front of rival gang members, "I can't believe 5 of ya'll couldn't even whoop 1 Junky Assed White Boy. Ya'll are a bunch of Pussy Assed Bitches." (Id. at 7) Plaintiff filed a grievance about Morton's conduct. When Plaintiff was released from segregation on April 25, 2018, Robertson tried to return Plaintiff to the same pod with the gang members who had attacked him. According to Plaintiff, prison staff knew that there was a "Smash On Sight" against him but failed to protect Plaintiff from the known harm by Vice Lords and failed to report the Security Threat Group activity. (Id. at 8-9).
>
> On April 28, 2018, Plaintiff was attacked by three Vice Lord gang members while waiting to exit the chow hall. Plaintiff's nose was broken and he had "huge knots on the side of [his] head and the back of [his] head." (Id. at 9). Plaintiff was treated at Bolivar General Hospital for his injuries. He suffers from permanent facial disfiguration as a result of the second attack.

(ECF No. 4 at 3-4.)

Defendants first contend they are entitled to judgment as a matter of law on Gregory's claims for failure to protect on the ground that he failed to exhaust his administrative remedies. In support of this argument, they have submitted the Declaration of Rebecca Wilson, Grievance Chairperson at the HCCF. (Wilson Decl., ECF No. 31-6.)

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."). However, a prisoner is not required to demonstrate exhaustion in his complaint. *Jones*, 549 U.S. at 216. Failure to exhaust is an affirmative defense on which the defendant has the burden of proof. *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011); *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011).

Section 1997e(a) requires not merely exhaustion of the available administrative remedies, but *proper exhaustion* of those remedies, meaning that a prisoner must comply with the institution's "critical procedural rules," such as time limits for filing grievances. *Woodford v. Ngo*, 548 U.S. 81 (2006). The Sixth Circuit requires prisoners "to make 'affirmative efforts to comply with the administrative procedures,' and analyzes whether those 'efforts to exhaust were sufficient under the circumstances.'" *Risher*, 639 F.3d at 240 (quoting *Napier*, 636 F.3d at 224). "[I]f the plaintiff contends he was prevented from exhausting his remedies . . . the defendant [must] present evidence showing that the plaintiff's ability to exhaust was not hindered." *Surles*, 678 F.3d at 458 n.10.

Wilson, the Grievance Chairperson, explains in her Declaration that the HCCF, though managed by CoreCivic, a private corporation, follows the grievance policies implemented by the Tennessee Department of Correction (TDOC). (Wilson Decl. ¶¶ 2, 4-5, 7-9, ECF No. 31-6 at 1-2.) An inmate may pursue a typical, or normal, grievance through three levels of review. First, the Grievance Chairperson reviews the grievance and provides the inmate with a response. If the response is appealed, the Grievance Committee holds a hearing and makes a recommendation to the Warden, who issues a decision. The inmate then may appeal the Warden's decision to the Deputy Commissioner of the TDOC; the Deputy Commissioner's decision is final. (*Id.* ¶ 10 at 2.)

An inmate complaining about discrimination based on race, color, or national origin also may choose to file a Title VI complaint, a procedure that is separate from the normal TDOC grievance process and limited to determining whether there has been a violation of Title VI of the Civil Rights Act of 1964.[2] The Grievance Chairperson forwards such grievances to the Title VI Site Coordinator, who investigates and notifies the Grievance Chairperson of the results. The complaint and the Site Coordinator's findings then are sent to the TDOC Central Office Title VI Coordinator, who makes a decision about whether a Title VI violation occurred. The Grievance Chairperson notifies the inmate of that decision. An appeal to the TDOC Assistant Commissioner of Prisons is the last step if the inmate remains dissatisfied, and the Assistant Commissioner's decision is final. (*Id.* ¶¶ 12-15 at 3.) Wilson further declares that additional matters unrelated to whether there was a violation of Title VI may not be raised in the Title VI complaint procedure. An inmate wishing to complain about a Title VI issue and a non-Title VI issue must file both a

[2] Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 42 U.S.C. § 2000d.

Title VI complaint and a separate, non-Title VI grievance that follows the normal grievance procedure. (*Id.* ¶ 16.)

In this case, the undisputed evidence in the record shows Gregory filed only two grievances at the HCCF after allegedly being attacked by gang members on April 16, 2018. (*Id.* ¶ 18 at 4.) First, on April 26, 2018, Gregory filed a grievance he designated as "Title VI" and in which he complained of "Racism and Retalliation" [sic]. (*Id.* ¶ 19 at 4; *id.* Ex. at 12-14.) He alleged that his treatment by Morton, Robertson, and other HCCF prison officials in the wake of the April 16, 2018, attack amounted to retaliation on account of his race. (*Id.*) Those allegations triggered the Title VI complaint process. (*Id.* ¶ 20.) Gregory exhausted that procedure, but the TDOC Assistant Commissioner of Prisons ultimately found no Title VI violation. (*Id.* Ex. at 6-11.)

Gregory filed a second grievance at the HCCF on May 28, 2018, which was processed through the normal grievance procedure. That grievance concerned a medical issue, was not filed against either Defendant Morton or Robertson, and is wholly unrelated to any issue in this case. (*Id.* ¶ 21; *id.* Ex. at 15-20.)

Defendants contend the Title VI complaint that Gregory filed on April 26, 2018, was not effective to exhaust his Eighth Amendment failure to protect claims because the only issue that could be considered in the Title VI procedure was whether he was subjected to racial discrimination. Gregory filed no grievance within the normal grievance procedure complaining that either Morton or Robertson failed to protect him in connection with the April 16, 2018, attack. Moreover, the Title VI complaint cannot have exhausted any failure to protect claim related to the second attack on Gregory; the second attack did not occur until April 28, 2018, two days *after* he filed the Title VI complaint.

Gregory has offered nothing to refute the evidence set out in Grievance Chairperson Wilson's Declaration. Because Gregory did not exhaust his administrative remedies with regard to his Eighth Amendment claims for failure to protect, Defendants Morton and Robertson are entitled to judgment as a matter of law on those claims.

Gregory's Title VI complaint was, however, sufficient to exhaust his Fourteenth Amendment equal protection claim against Defendant Morton. Nevertheless, Morton contends he is entitled to judgment as a matter of law on that claim as well. In support of his contention, Morton submits his Declaration, (Morton Decl., ECF No. 31-4), and the Declaration of HCCF Disciplinary Board Chairman Fontella Mason, (Mason Decl., ECF No. 31-7).

Gregory has alleged that Morton discriminated against him on account of his race by charging him with fighting after the April 16, 2018, attack and punishing him with eight days in segregation while holding two of his attackers for only one day. Gregory states that he is white and his attackers were black, as is Morton. (ECF No. 1 at 7.) Gregory also alleges that while he was in segregation he was told by another Correctional Officer that Morton taunted the Vice Lords, telling them in front of rival gang members, "'I can't believe 5 of ya'll couldn't even whoop 1 junky assed white boy. Ya'll are a bunch of pussy assed bitches.'" (*Id.*) Gregory alleges this conduct also amounted to retaliation based on his race.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. In order to establish an equal protection claim, a plaintiff must demonstrate "that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir.

2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006), *overruled on other grounds by Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008)). A litigant "who alleges an equal protection violation has the burden of proving 'the existence of purposeful discrimination.'" *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) (quoting *Whitus v. Georgia*, 385 U.S. 545, 550 (1967)); *Mulazim v. Bailey*, No. 96-1369, 1997 WL 48988, at *1 (6th Cir. Feb. 4, 1997) ("In order to establish a violation of the Equal Protection Clause, an inmate must prove that a racially discriminatory intent or purpose was a factor in the decision of the prison officials. . . . The plaintiff bears the ultimate burden of proving that the injury complained of was due to improper consideration of a discriminating purpose.").

In his Declaration, Morton states that on April 16, 2018, he saw Gregory fighting with two other inmates, Kelvin Cobb and Robert McCray. All three were placed in segregation as a result, and Morton charged all three inmates with fighting, a disciplinary violation. (Morton Decl. ¶¶ 5, 12-13, ECF No. 31-4 at 2-3.) The charges were heard by the HCCF Disciplinary Board, and Morton states he had no involvement in the Board's decisions concerning whether Gregory should be convicted of the disciplinary charge or the extent of his punishment. (*Id.* ¶ 14 at 3.)[3] He also declares he was not involved in any decision regarding if or when to return Gregory to the general population. (*Id.* ¶ 15.) Gregory has not refuted this evidence.

The undisputed evidence shows that Defendant Morton could not have purposely discriminated against Gregory with regard to his conviction for fighting or the type and severity

---

[3] Disciplinary Board Chairman Mason declares that inmates Cobb and McCray were charged with more serious Class B disciplinary offenses, whereas Gregory was charged with a less serious Class C offense. Upon conviction, both Cobb and McCray received time served plus a fine as punishment, but Gregory received only time served. (Mason Decl. ¶¶ 5, 9, 11, ECF No. 31-7 at 2-3.) Mason also states that Gregory remained in segregation longer than he had to because he refused a cell assignment when another officer attempted to move him to the general population. (*Id.* ¶ 12 at 3.)

of the punishment he received. Though Morton charged Gregory, Cobb, and McCray all with fighting, he was not involved in the disciplinary proceedings to any further extent. Morton thus is entitled to judgment as a matter of law on Gregory's equal protection claim.

For the foregoing reasons, the Court concludes there are no issues of material fact for trial. Defendants are entitled to judgment as a matter of law on all of Gregory's remaining claims; the motion for summary judgment is therefore GRANTED.

It is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rule of Appellate Procedure 24(a), that any appeal in this matter by Gregory would not be taken in good faith. If Gregory nevertheless files a notice of appeal and wishes to pay the $505 appellate filing fee using the installment procedures of the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(a)-(b), he also must submit a new *in forma pauperis* affidavit and a current copy of his inmate trust account statement for the last six months.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE